(69 App. Div. 45.)

MURRAY v. SWEASY et al.

(Supreme Court, Appellate Division, First Department. February 7, 1902.)

1. DEED OR MORTGAGE—EVIDENCE—SUFFICIENCY.

Plaintiff owned mortgaged property, and had defaulted for taxes. The mortgagee's representative agreed to pay the taxes on receiving notes for the amount. The notes were given, a deed executed by plaintiff and wife to a third person acting for the mortgagee's representative, and a lease given back for an amount as rent which equaled the accruing taxes. It did not appear that the mortgage was canceled, or that plaintiff was released from liability thereon by any writing. In an ac-

tion to have the deed declared a mortgage, plaintiff, his wife, and son testified that when the notes were paid the house was to come back to him, etc. The mortgagee's representative testified that an option was given to repurchase within a certain time, which had expired. The latter's attorney, who conducted. the transaction, testified that plaintiff wished an opportunity to repurchase, provided he paid all his notes; that he did not state the deed was mere security, but said it must be given to avoid foreclosure; that a copy of the option was sent plaintiff the following day; that, after the deed was signed, he referred to the lease and option, and plaintiff's wife said, "We do not want any option;" that he did not state that plaintiff would be relieved from liability on the mortgage, etc. Plaintiff denied having ever received the option. *Held*, that a decree declaring the deed to be a mortgage was sustained.

**2. ATTORNEY—APPARENT AUTHORITY.**

The attorney having been held out to plaintiff and his wife by the mortgagee's representative as authorized to conduct the transaction, they were justified in relying on his apparent authority; and, by accepting the deed and the benefits accruing thereunder, his acts and the agreement as made by him were ratified and became binding on the representative.

**8. SAME—DECLARATIONS—ADMISSIBILITY AS AGAINST PRINCIPAL.**

In an action to have an absolute deed declared a mortgage, declarations made by the attorney representing the grantees in procuring the deed, as well as his subsequent declarations and acts relating thereto while still representing the grantees, were admissible.

Appeal from special term, New York county.

Action by Henry Murray against J. F. Sweasy and another to have an absolute deed declared a mortgage and for other relief. Judgment for plaintiff, and defendants appeal. Affirmed.

See 66 N. Y. Supp. 72.

The complaint averred that the plaintiff was the owner and in possession of a house and lot, subject to a mortgage of $35,000; that the defendant John W. Sterling, an attorney, represented the mortgagee, and on or about March 7, 1898, demanded of the plaintiff collateral to secure payment of taxes levied against the property and unpaid for several years, and agreed to pay the same if the plaintiff would give him a series of 20 notes for $239.79 each, payable monthly, and all payable upon default in any one note, and for further security a deed of the premises to the defendant J. F. Sweasy, who should deliver a yearly lease to the plaintiff at the monthly rental of $212.50; that the notes and deed were given, and the lease was taken, upon the representation and understanding that the deed and lease were collateral security for the payment of the sum alleged to be due from the plaintiff, the rent under the lease representing yearly taxes, water rates, and premium upon a policy of fire insurance; that plaintiff was not indebted to the defendant Sweasy, and received no consideration from him for the deed; that in August, 1898, a summons and complaint were given the plaintiff in an action brought by Sweasy to recover upon 17 notes alleged to be due, but the plaintiff continued making payment to defendant Sterling; that in April, 1900, he informed the latter that he was ready to pay the mortgage on the premises and the notes outstanding, and requested a statement, which was not furnished, the defendant Sterling claiming to be the owner of the premises by virtue of the deed which had been given as collateral; that on April 21, 1900, judgment in favor of defendant Sweasy was entered against the plaintiff in the action which had been brought in August, 1898, and thereupon defendant Sweasy commenced an action to dispossess the plaintiff; that the plaintiff has tendered payment upon said judgment, and is willing to pay all sums due for the redemption of the premises. Judgment is asked that the defendant Sweasy be restrained from further proceeding against the plaintiff, that the premises be adjudged to belong to the plaintiff, and that an account be taken of the amount due to said Sweasy. The answer

averred that the deed was given unconditionally, and in consideration the defendant Sterling agreed that, if the notes were paid, "he would insure the plaintiff against any immediate proceedings for a foreclosure of the said mortgage, and against any liability for a deficiency judgment whenever such foreclosure might be deemed necessary, and would thus relieve the plaintiff from his liability for the principal of the said bond and mortgage for $35,000." Upon these issues the case was tried, and the learned trial judge decided that the real agreement between the parties was that the deed, although absolute on its face, should be regarded in equity as a mortgage. From the judgment entered on this decision the defendants appeal.

Argued before VAN BRUNT, P. J., and HATCH, O'BRIEN, and INGRAHAM, JJ.

John A. Garver, for appellants.
Lawrence E. Brown, for respondent.

O'BRIEN, J. The principal question upon this appeal is one of fact, and the appellant, recognizing this, insists that the decision of the special term is not supported by that clear, satisfactory, and convincing evidence which under some of the authorities is required in order to prove a deed a mortgage. We assent to the proposition that evidence intended to convert a deed absolute in form into a mortgage must be of a clear and decisive import; but this in no way impairs the rule that each case is to be decided on its own special facts. Here, whether we take the plaintiff's or the defendant's version, the deed, absolute in form, was not given and held unconditionally, but was subject to some agreement by which it might subsequently be defeated. The burden was upon the plaintiff to show by a fair preponderance of evidence that the agreement was as alleged in his complaint. In disposing, therefore, of appellant's main contention that the evidence is not only insufficient, but that the judgment is against the weight of evidence, we are required briefly to review the testimony of the principal witnesses.

That there was an agreement between the parties is conceded, and the point upon which the case must turn is, what was the understanding when the deed and the notes were given by the plaintiff? It is admitted that the plaintiff was the owner of the property, and that there was an outstanding mortgage of $35,000, the mortgagee being represented by Mr. Sterling; that the plaintiff had failed to pay the taxes and water rates; that the defendant Sterling agreed to pay the same upon receiving from the plaintiff a series of notes which covered the amount; that such notes were given; and that the deed was also given by the plaintiff and his wife, and the title was nominally transferred to Mr. Sweasy, and a lease of the premises was given by him to the plaintiff for an amount as rent which equaled the yearly taxes, water rates, and insurance premiums. It does not appear that the outstanding bond and mortgage were canceled, or that the plaintiff was by any writing released upon such obligation. The deed was given by the plaintiff and his wife on March 23, 1898, at the plaintiff's office, in the presence of his son, where the defendant Sterling's representative and managing clerk, Mr. Betts, also an attorney, went with the papers. These papers included 20 notes to cover the taxes past due which Mr. Sterling was

to pay, 7 notes to cover interest on the mortgage due, the deed which the plaintiff had already previously signed, a form of lease, and a "proposed option." After an interview lasting over an hour, in which the plaintiff's wife at first refused to give her signature, the deed was duly executed. The plaintiff testified that Mr. Betts called to his attention the taxes and interest unpaid, and suggested that some plan be adopted by which he could retain the house and pay the moneys, and said that Mr. Sterling agreed to take a deed of the property and notes for arrears, and would do anything reasonable to have him retain the house; that "they wanted their money, and they wanted some security for the money, and they did not want to foreclose, because they were afraid the house would not bring the amount of the mortgage; and then this arrangement was substituted for the foreclosure: that I should give a deed of that house, and, when the notes were paid, the house should come back to me. Mr. Betts said they only asked the deed for the purpose of additional security for those notes; they did not want it for any other purpose; that the moment those notes were paid the house came back to me. This interview was held in his office in Wall street." He also testified: That at the interview of March 23d his wife asked: "What does this mean? Does this mean I am to lose my home,—lose my house?" And Mr. Betts said: "It don't mean anything of the kind. It means that we want this as security for these notes in relation to the taxes that Mr. Sterling paid." That they argued and encouraged her to sign, and Mr. Betts assured her again and again that there was no danger in the world. That his son, having heard Mr. Betts' statements, also urged her to sign the deed. Mr. Murray further testified that after the deed was given Mr. Betts said that they must provide so that taxes would not accumulate again, and a lease would be given, with a monthly rental which would cover taxes, etc., and interest on the mortgage, and this was done; that in April, 1900, he told Mr. Betts he was ready to pay the notes and everything, and Mr. Betts congratulated him, and said he would at once make up a statement; that a few days afterwards Mr. Betts notified him that Mr. Sterling refused to take money for the house and refused to see him; that Mr. Sweasy had recovered a judgment upon some of the notes, and he had tendered payment of everything due; that at no time had he said anything to Mr. Betts about getting an option to repurchase, such as the paper in evidence signed by Mr. Sweasy and dated March 24th, the day after the deed was given. A deposition by Mrs. Murray was read in evidence, and therein she testified that at the meeting of March 23d she asked Mr. Betts if she was to understand that they were to give up the house by signing the paper, and he answered, "No; that it was merely for the purpose of holding it until they redeemed it by the payment of the notes, and they could either let it or sell it until such time as they paid;" that Mr. Betts said he would return the deed when the notes were paid; that she did not know any lease was to be given, all she knew being that the notes were to be paid, and, when paid, the deed of the house was to be returned. Plaintiff's son corroborated this testimony. The defendant Sterling testified that an option

was given to repurchase until October, 1899, as stated in the writing signed by Mr. Sweasy. It was admitted that Mr. Sweasy had acted for the defendant Sterling, and himself gave no consideration for the deed. Mr. Betts testified that before the meeting of March 23d Mr. Murray had said he would like an opportunity to repurchase the property, provided he paid all his notes; that he had a draft of the proposed option, and showed it to Mrs. Murray; that he did not state that the deed was taken merely as security, but said that he had been instructed to foreclose the mortgage, and the only way to avoid foreclosure was to sign the deed; that a copy of the option was sent to Mr. Murray the following day; that after the deed was signed he referred to the lease and option, and Mrs. Murray spoke up very quickly, and said, "We do not want an option." Mr. Betts further testified that he had stated at the interview that an option would be given to Mr. Murray to repurchase at any time within 20 months upon payment of $35,000 and everything unpaid; that Mrs. Murray was not given any consideration for the deed; that the rental expressed in the lease was interest on the mortgage, plus taxes, etc.; that he did not state to Mr. Murray that by conveying the property he would be relieved from his liability on the bond, and there was no understanding on the subject, verbal or written. Mr. Sterling testified that he had not instructed Mr. Betts to take the deed as collateral security, and said that by signing the deed Mr. Murray, as matter of law, was released from the mortgage and bond. The option signed by Mr. Sweasy, and dated March 24th, after which time it was sent to the plaintiff, recited that the latter was given an option to purchase the premises before October 25, 1899, for $35,000, and such additional amount as remained unpaid upon 27 notes dated March 7, 1898, aggregating the sum of $6,848.29; the option to terminate upon default in the payment of any of the notes. The plaintiff denied that he ever received this option.

This evidence shows clearly that the deed, although absolute in form, was not given unconditionally, as alleged in the answer, but that there was some other understanding between the parties. As summarized by the defendant, the situation was that, instead of the mortgage being foreclosed and title thus obtained, the plaintiff gave the mortgagee a deed of the property and notes for the defaulted interest and taxes, and that it was not until after this arrangement had actually been concluded that, upon plaintiff's request, the written option to repurchase the property was given, together with the lease, the rental of which was sufficient to represent the interest on the $35,000 mortgage and taxes accruing upon the property for the period during which the option could be exercised. On the other hand, the plaintiff claims that, prior to and at the time of the execution of the deed, it was distinctly stated to him and his wife, and agreed upon, that, on the payment of the notes which he gave, the house would be deeded back, and that upon such assurance he and his wife executed the deed. As correctly urged by the respondent, it is immaterial whether there was an oral agreement that the deed was given as security, and that plaintiff had a right to redeem, or whether there was a written option; for, accepting either version,

it is certain that there was some collateral agreement for the redemp-
tion of the premises, made at or before the execution of the deed,
which constituted a defeasance to be read into the deed, and which,
during the time that the right to redeem existed, made it a mortgage.
That such an agreement may be established by parol or extrinsic
evidence was directly held in Horn v. Keteltas, 46 N. Y. 605, and
many other cases to which reference was made by the judge at spe-
cial term. We do not understand, however, that it is seriously dis-
puted but that a collateral agreement existed, and, as already pointed
out, the real contest was as to its terms.

Upon evidence which in part we have referred to and quoted, the
learned trial judge found in favor of the plaintiff; and, although
there are some considerations which furnish argument in support of
the defendant's view, they do not overcome the force of the plain-
tiff's testimony, which is sufficient to sustain the decision upon which
the judgment rests. Thus, as against the weight to be given to the
written option, which limited the time for redemption and which was
undoubtedly sent, we have the plaintiff's testimony that it was never
received, and the additional fact that the 27 notes mentioned therein
extended for several months beyond the time specified in the option.
It is true, however, that this is to some extent explained by the tes-
timony that, by arrangement between the parties just before the
giving of the deed, the interest note, which was originally 21 notes,
was split into 7 notes, payable monthly, and the time of payment
thus extended. Another circumstance in favor of the plaintiff is
that, although Mr. Sterling testified that in his view the signing of
the deed worked a release of the plaintiff from liability under the
bond and mortgage, it is not claimed that any release was given, nor
that the mortgage was satisfied; and Mr. Betts, his agent, stated
that that subject was not discussed, nor was any agreement reached
upon it. Moreover, we have the additional fact that under the terms
of the lease a way was provided by which the interest on the mort-
gage, as well as taxes, etc., were thereafter to be paid by the plain-
tiff. According to the claims of the defendant Sterling, the effect of
the arrangement would be to leave the bond and mortgage outstand-
ing, to give him notes for past interest and taxes, and, in the shape
of "rents," payments for yearly taxes and interest, etc., and, in addi-
tion, a deed to the premises. This certainly was a good arrange-
ment for Mr. Sterling and those whom he represented, but the plain-
tiff and his wife were by no means equally favored by it. As against
the suggestion of the defendant that, although the plaintiff lost title
in giving the deed, he thereby avoided a deficiency judgment which
would have resulted upon a sale of the premises under foreclosure,
we have the suggestion of the plaintiff that the defendant, in not
foreclosing the property, which had depreciated to such an extent
that it would not at that time pay the amount of the mortgage, not
only secured the past indebtedness for taxes and interest and the
accruing charges, but retained the property itself as security for the
mortgage debt. Our conclusion, after considering the testimony ad-
duced on both sides, is that we would not be justified in interfering

with the decision of the court below, which is supported by sufficient evidence and is not against the weight thereof.

The only remaining subject which it is necessary for us to discuss is the contention that the defendant Sterling was not bound by the statements of Betts, or by the agreement which the court found had been made by him with the plaintiff and his wife. In this connection it must be remembered that Mr. Betts was the person with whom they dealt, and concededly he was the one who throughout the transaction represented Mr. Sterling. It would be a strange rule of law which would enable the latter to make an agreement by which, so far as there were profits, he should benefit, and which, to the extent that there was any burden, he might repudiate. If Mr. Betts was not fully authorized to conduct the transaction, he was so held out to the plaintiff and his wife, and they were justified in acting upon the apparent authority with which he was clothed; and as it was through him that the agreement, whatever its nature, was made and the deed obtained, by accepting the deed and the benefits accruing under it, they ratified his acts and the agreements made by him upon which it was obtained. It was competent to prove what he said in connection with obtaining the deed, as well as to prove his subsequent declarations and acts bearing upon the subject while he was still representing Mr. Sterling, because all this evidence threw light upon what agreement was actually made by the parties. The subsequent declaration was competent to show the tender by the plaintiff of the amount due.

We think, therefore, that the judgment should be affirmed, with costs. All concur.